The first one is United States of America v. Cockerham, and we will hear Ms. McIntyre. Good afternoon. May it please the Court. Not all felonies are created equal. Diaz tells us that. That simply classifying a crime as a felony does not meet the level of historical progeny. In this case, Edward Cockerham is permanently disarmed over the course of his lifetime for a prior felony conviction for failure to pay child support. If you win, what would the relief be? You'd get out of the conditional plea, it would go back, and the District Court would now apply Diaz and do the Diaz work? I think that's correct. You aren't asking us to do it in the first instance. Well, I think that when the District Court dealt with it, they would have this Court's opinion, which would say that failure to pay child support is an insufficient felony to justify lifetime disarmament under the Second Amendment, so the District Court would have to rule in a way that dismissed the indictment. I'm not asking this Court to render. I'm asking it to be remanded. Make a remand for the dismissal hearing to occur now with the benefit of Diaz because your error is premised on Diaz. No one had Diaz at the time. That's correct. But you want us to give a little intimation of how we think Diaz would play out? I think that this Court has the ability to also address the failure to pay child support, specific that felony. Now, in Bullock, we said that the government could have its burden met at the appellate level. Did we say that we could do the history in the first instance? Or do you think the parties have given enough history here? I don't think there is inadequate history, so I don't think that there's any additional history that could justify his disarmament here, but I also think that, again, with Bullock, the government had the chance to support these My point is, is it a forfeiture argument that government didn't meet its burden, or you're just happy to take on history right now in 20 minutes and tell us what the analog is, or isn't? I think it's forfeiture, certainly, but I also think that I think that the government had the burden to demonstrate those analogs, and now we're here. Let's say you're right, and this failure to pay doesn't qualify. If he has other predicates that would qualify, because his PSR indicated there were a couple of felonies that were unknown as to disposition, would the government have any bar re-indicting him on one of them, the aggravated assault one, for example? Assuming they exist, I don't think... Well, you remember in the PSR, he does have an aggravated assault, and the disposition is just, quote, unknown. Well, in the PSR, in the recitation of his prior felonies, I don't believe there was an aggravated assault. Maybe that was something related to just they had unknown information, but as far as I can remember, I looked at his failure to pay child support, and so he was a criminal history one. Paragraph 42, aggravated assault, disposition unknown. He was... We have no evidence of that, and so I think that the government would certainly... I guess maybe they could try and re-indict him for G1 and use that prior. Because there was no specified prior here. That's correct. They only charged him under G1, and the only evidence that they've put forward on appeal has been the failure to pay child support, which we argue is an insufficient felony to justify his lifetime disarmament. If you prevail and we rule the way you want, would we be the first panel in the Fifth Circuit to ever overturn a G1 as applied? To overturn, I think, yes. Yeah, and that would create a split with multiple other circuits, wouldn't it? That said, presumptively lawful, we're going to wait for the Supreme Court before we do something with 922G. I don't know that it would. I think we can use range as a good analog here. Obviously, it was a different posture, but the Third Circuit considered fraud, and it said that fraud did not have the historical justification sufficient to justify a conviction. John Riemann from the Supreme Court. This is correct. You didn't 28J that to us. We did not. You haven't 28J'd, neither side has 28J'd any of the half dozen 922G1 cases. That's correct. So since December, you haven't given us any law, but there's been a lot of 922G1 law. There has, but even failure to pay child support, I'm using fraud here as an example. I don't think failure to pay child support is fraud. I think on the spectrum of theft to fraud, maybe it's more akin to fraud, but I'm not conceding that failure to pay child support is fraud. I offer that only to answer your question about the other circuits. I think you could look at Williams too. Williams has a detail. Sixth Circuit. That's correct. Which you didn't say. We did not. But again, I— I mean, a lot of courts are going in different directions. What is the way we should go on this? I think we have Diaz, so we need to continue the Diaz test, which— What is that test? The test is that the government needs to offer historical analogs that would— For the predicate. For the predicate only. No other circuits done this. I think the other circuits are moving in a dangerousness direction. I think maybe even this court is with some of its other opinions. I would offer Bullock, for example, Schnur. We're considering dangerousness and violence, but even if we— even if we agree that that's the direction we're moving in, that doesn't encompass Mr. Cockerham's prior conviction. Let's say Diaz does require us to look at each predicate and decide, you would say then historically, we've got to go back 200 years. That's correct. How does your average American who's got a felony know whether his felony means he can or can't possess a gun? I don't think they do know, and that's why we've also raised a vagueness challenge. You preserved a vagueness challenge? It was not preserved, but it's been raised, and we continue to raise it because— Isn't it barred by the appeal waiver also? I think it would be, and so I wasn't— that was not my intention to argue the vagueness piece, but I think the court— You had a conditional guilty plea here. We had a guilty plea that specifically— It was a conditional guilty plea. It allows you to litigate the dismissal, right? But we did not raise it in the motion dismiss. We only raised the argument on appeal. Well, that's because Diaz hadn't even issued. I agree. And so I think there is an argument that we could consider the vagueness today, but as far as we were interpreting the carve-out of the guilty plea, it was to encompass what was actually argued in the motion to dismiss, which at the time this was filed only included Diaz applied in the facial challenge, which of course is foreclosed under Diaz. And so— Your briefs don't seem to mention which statute was actually used in the original conviction. Do you know which statute it was? Yes, it was the Mississippi statute. Was it 97-53? I believe so, and I have it if I can respond to that and rebuttal more appropriately. I don't have it specifically before me. So as I read 97-53, and I want to ask both parties to confirm this, this is a felony that requires no prison time whatsoever. That's correct. And so Mr. Cockerham was— A dollar would be enough. Yes. A dollar of failure to pay child support. Yes. And Mr. Cockerham was given a five-year suspended sentence, and so that sentence was terminated— or his term of probation was terminated before he was arrested for the 922-G1, indicted on that conduct. And so we don't have an issue here where we have somebody who was a supervised releasee or continuing to serve a sentence. And the only prior that he had, again, as far as the record indicates here, as far as we have any evidence for, is that it was that failure to pay child support. And there— Do you know the amount at issue in this case? I believe that the order—his order of conviction was $1,200, I believe, was the actual amount of the— $1,200? That was the amount of restitution that he was ordered to pay, I believe. For some reason, I saw $5,000, but I'll let you all tell me. I think that the $5,000 number might be in the statute, either the federal— No, no, I'm talking about the record. Okay. I had a clerk pull up the family court docket this morning, and I thought it was $5,000. But that's why I'm asking you. As far as I know, at least in the discharge order that we submitted in our motion to supplement the record, I think that the judgment related to that order was $1,200, though I could be mistaken, but I remember a $1,200. I also don't know that it matters, at least as far as we're concerned under the Diaz test and under the government's burden here. I mean, the government has not offered significant or relevantly similar historical analogs that would justify this conduct. While we admit that Rahimi does not require a dead ringer or historical twin, the government's analogs, the only ones that they've offered here are theft and a failure to satisfy debts. Putting aside the fact that Bruin doubted that even three colonial analogs could suffice to show a tradition, neither theft nor failure to satisfy debts are relevantly similar here so as to justify his disarmament. If we begin to look at theft, at colonial times theft, and even today in most theft instances, you have the physical taking of something from another. In this case, failure to pay child support is an entirely modern invention based on modern policy concerns. You don't have the physical taking, which may include violence, may include dangerousness. I think that's where we get a lot of our theft precedent. In this case, it's a non-payment. If anything, it's an act of omission. It's not a physical act, a direct act that would be akin to theft. Additionally, Bruin and Rahimi tell us and Diaz that we have to look at the why and the how when we're considering whether a historical analog is relevantly similar. So the how being the burden on the right holder and the why being the problem that the law is intended to address. Diaz tells us that the why, the problem with theft was to deter violence and lawlessness. Failure to pay child support is not a crime of violence or dangerousness. I mean, we can argue that it is a crime of irresponsibility. We can argue that perhaps there is a moral component to it. You think you'd win in the Third Circuit? I think we would. Would you win in the Sixth? I think we would. But in that opinion, Thapar says we look at everything. That's correct. But I still think we have that line in Williams where the court talks about, you know, there are crimes like mail fraud, citing the Cantor v. Barr, Judge Barrett, now Justice Barrett's dissent. We have the false statements in range. And those are both... Under his logic, we would look at the whole PSR, correct? Even 404B. I think that's correct. It's a different standard than we have in Diaz, which we only look at the instant offense conduct. Let's say Diaz actually means something that's comprehensible. So we have an indictment like the one here, it doesn't specify the felony. Gentlemen, your client chooses to go to trial. We get to a jury instruction. What is the jury instruction under Diaz on that third element? It can't just be you have to find he's been previously convicted of felony. So instead, since you're proposing this rule, what does that third element say? I think it has to be a mixed question of law and fact. No, but I'm asking you to assume he elects to go to trial. District courts have to be told what's the modified third element to comply with Diaz. Do it right now if it's workable. Are we assuming that... I think a carve-out would make sense to have the district court judge be the first arbiter of the legal issue. So the issue of is there a historical... The guy has chosen to go to trial. I still think that the judge would deal with it. Assuming that we filed a motion to dismiss. The judge gets to decide an element that the jury's got to find beyond a reasonable doubt. The third element of every pattern instruction in the country is you, jury, have to decide he's been previously convicted of a felony. You're saying now after Diaz, the judges decide that third element? I think that one way to deal with it would be... On that one way, does the judge have to decide it? Is that how the pattern instructions have to be modified to make Diaz work? Are we assuming there was a motion to dismiss? No, I'm saying he chose... Goes to trial. Well, yeah, it was a... It didn't even specify the felony here. I think... Goes to trial. What do you say to the jury? How do they decide this issue? I think when we get to trial, certainly the actual predicate felony has to be proven at some point. And then I think beyond that, if the judge is not the party who's deciding it, I think that... I guess under Diaz, you probably have to include some kind of jury instruction where you bring in experts. You try to do it because you're urging this. Finish. What does the jury get told? You have to find he was previously convicted of a felony. Tell me how they... And that that felony, at the time of the founding, was punished either with capital punishment death or a civil death, total... This is a constitutional point though, right? I'm sorry? This is a constitutional argument, not a factual argument. This is, and that's why I think it would make more sense to go to the district court first and then have the elements of the crime be dealt with by the jury. That is unlike any existing pattern instruction. I think Diaz has shifted the landscape so that we... But do you know of any district court that's actually applied it like that? I don't, but I think that that's why we're having a lot of problems now coming to this court. I fully agree that you're having a lot of problems and district judges are having a lot of problems. We've created the problem. We've announced Diaz. And even a defense attorney can't say, well, this is what that element would be. I think, yeah, I think the element would have to be the test that Diaz... Taken from the jury. So you'd have to file a bill of particulars to know which of several felony incidents. I think that's correct. And I think that the indictment would either... You'd have to have a bill of particulars or the indictment would have to be specific enough to... The defendant doesn't lose if they don't file the bill of particulars. They're entitled not to.  But then I think the government has the burden of proving that. Multiple felonies at trial. And then the jury has to decide which ones qualify and which don't. Or at least the government picks... I mean, because you can be convicted under G1 of any of the prior felonies. So the government picks the felony, whether it's many or a single one, the government has the right to have the discretion to decide. And then they go and they prove that at trial. I think that's what Diaz would require if we're not taking some kind of bifurcated approach where the judge would be able to consider it. Why wouldn't it be simpler than that? The government in the indictment sets forth the predicate felonies. And if there are any that defense counsel thinks are unconstitutional as applied, you object to a motion to dismiss to that particular predicate. I think that could work. And that's what we've been doing now. Is, you know, even in the absence of having some kind of specific felony elicited in the indictment, we've been filing motions to dismiss, arguing. And I think it's a certainly imperfect system because then we are being forced to try and figure out... Is it different from any constitutional argument against a statute? The statute violates the first amendment as applied. I think not. And I think in those instances, you still have the judge who is usually figuring out the legal question first. And that's in this imperfect world. I think that's what we would submit. And I see I'm in my last 30 seconds. But I would say if Diaz is to have any teeth, and if we are going to agree that Diaz is the law of the circuit as we have, I think this is a case that cannot be a constitutional predicate conviction under G1. The failure to pay child support, again, is an entirely modern invention. It has no historical analog. And the analogs that the government has offered as relevantly similar just are not on point under any test. And so we would ask that this court reverse. Thank you. Ms. Case? Good afternoon. May it please the court. My name is Jennifer Case. And I represent the government in this appeal. Mr. Cockerham has a felony conviction for failure to pay child support. And there are at least two historical analogs that show that section 922 G1 is constitutional as applied to Mr. Cockerham. One is debtor's prison. And the other is the wrongful taking of property like theft. I assume you saw opposing counsels, 28J? Yes, Your Honor. What's your response to the 28J? As I understand it, you can get out of debtor's prison simply by providing your assets. But Congress and states at the founding exempted firearms from that. So in a way, that argument might backfire on you. So not wholly, Your Honor. As I appreciate the statute cited in the Rule 28J, most of them, including the federal statute, were regarding militia service. The federal statute was for the states to create militias and provide arms and ammunition accoutrements for the militia service. Yeah, but that was like every able-bodied male between the ages of 18 and 60-something or whatever. I mean, that was the general population. Yes, Your Honor. And it's clearly exempting firearms from forfeiture. Well, so that was my next point, Your Honor, which is the state statutes, Delaware, Virginia, and Pennsylvania, which were cited in that Rule 28J, concern militia service. And they only exempted not firearms generally, not ammunition generally, but those arms that were necessary for the militia service. So it was tying those things together. And those laws do not show that arms were unable to be forfeited because the Second Amendment didn't allow that loss of the arms. It was to allow the militias to carry forward and to fulfill their missions. I will say, though, the other three statutes cited in that Rule 28J for Connecticut, Maryland, and Massachusetts were unrelated to militia service as far as I could discern on Friday and were more of a graceful step to allow people to keep their arm, allow debtors to keep an arm for subsistence, to live, to eat. Were there statutes that go the other way? That... That allow forfeiture of weapons? Well, yes. The debtor's prison laws in general, which we're referring to. Well, but the problem with the debtor's prison is once you got out of debtor's prison, you weren't prohibited from being armed, right? Correct, Your Honor. So, but you were at least disarmed for the time that you did not pay your debt and for as much time as it took you to then... Has Mr. Cockerham paid his debt? As far as the pre-sentence report says, he has not. He tells the probation officer that he probably still owes child support. And so that's what the record... Child support from before this conviction or child support as it's accruing? His statement is not clear, Your Honor. So this is at ROA page 372, that he may have a balance on child support. So at least for as long as one has the debt here, child support, the debtor's prison analogy would support disarmament for that time. And that sort of leads to... The history argument is one page in the brief, the government's brief. So this would be very consequential, but virtually no history has been given to us. In fact, that one page just cites one law review article and what, Rahimi, Diaz, and Tennessee versus Garner. Right. So you're 200 years off. It's taken... The debtor's prison argument is... I'm just... Citations to the law review articles that discuss how the debtor's prisons work. I guess the point is, yes, in Bullock, we said the government can fill in the gaps that they didn't do on appeal, but here it's a page. It's really one paragraph, three sites, none of them before the 21st century. Is the government really expecting us to do that history? Come up with the analog? No, Your Honor, we've provided the analog, which is the debtor's prisons that indefinitely imprisoned a person until they could pay their debts, which is more than the criminal justice system does, which at least gives you a term of years for which you were imprisoned. So this was indefinite imprisonment and one way out was to give up your entire estate. Do you remember in your brief footnote three, you say that 922 G1 is not subject to an as-applied challenge. Is that still viable given Diaz? I mean, you wrote it already with the benefit of Diaz. It is placed in a footnote because that is the government's frontline argument. We realize that in this circuit, Diaz forecloses... You think it forecloses it? Because your office litigated Schnur, correct? Do you know Schnur? Yes, Your Honor. And Giglio? Yes, Your Honor. So this isn't criticism, but it's the same as the other counsel. These are all intervening 922 G1 cases, but no one gave us a 20-H-A since the reply brief was filed in December. Neither party has even presented the Third Circuit's range decision. So we have virtually no history and we have virtually no current law, but it sounds like you're familiar with Schnur... Yes, Your Honor. ...and you know the position I took there that we aren't foreclosed, but the government's view, reading of Diaz is it does forecloses. Not that it's foreclosed, but that Diaz leaves open the door for as-applied challenges. The door has not been shut in this circuit as it has been in the Fourth, Eighth, and the Tenth Circuit. I see. Okay. And so... So if we rule against you, by virtue of that footnote, you've preserved the split that we would be creating with those circuits. We are trying to preserve that frontline argument, Your Honor. Range, you may know this, the Solicitor General sought an extension, but ultimately didn't file for cert in the Third Circuit range. Yes, Your Honor. And they didn't in the Sixth Circuit, in the Williams, last August. So the government, at the moment, is living with the split. We are uncomfortably in the split, Your Honor. Okay. If Diaz does require litigating predicate by predicate, you heard my sort of questions about the pattern jury instructions. Do you think that, essentially, the only way 922G jury would only now get two elements, they wouldn't get the third? It would have to be decided to motion to dismiss at this stage? Is that the way it would have to work? The jury still would have to find a felony, sort of as they do today. We can't skip the fact that a felony is, there's a felony conviction. Now, often that felony is not presented in most cases, but the jury can't be deciding the legal issue of what the founding generation would have. Although the Supreme Court has called this historical evidence. And this court has said in the Bullitt case that this is a legal analysis, so it has to be that the district court judge is the one deciding. Now, maybe if this court continues on a path that leaves open the door for as-applied challenges, not felony by felony even, but felon by felon, because Mr. Cockerham's position could be different if, suppose the record said he didn't owe any debt, right, and he had the gun. That would be an even harder position for the government to be in. So it's not just felony by felony. It's felon by felon at a particular point in time is where we are right now, which is very difficult. But how would we, just put Diaz aside for a minute. How do we get to an approach where as-applied challenges are foreclosed under G1? Because, I mean, as I read Bruin and as I read Rahimi, we have to answer the how and the why of the underlying predicate, don't we? I don't think this court has to do that right now. Right now, this court could accept the Supreme Court's repeated assurances that felons can be disarmed and could accept the history that supports that. And the many as-applied challenges that have been brought in this court. Well, the Supreme Court has said that they're presumptively lawful, not categorically lawful. So we have to do something with that, don't we? I don't think this court has to. Well, let me give you a hypothetical. Because as I understand it, the Mississippi statute here, $1 is enough. Would you agree with that? I'm not familiar with the statute here. Take my word for it for arguing it. And as I understand it, 922 G1 is a lifetime ban. Agreed. Once you're a felon, no arms for the rest of your life. There are a few narrow... There are ways of getting... They're off ramps, I understand that. But, okay, so here's my admittedly extreme hypothetical. $1 nonpayment results in a felony conviction. Under Mississippi law, it requires zero jail time. So this is a zero jail time type felony. Somebody owes $1, they're convicted, they pay the $1. 35 years later, they wish to own a gun. What's your position on whether it's constitutional as applied to that pattern? That's not this case. I'm just trying to test the limits of your theory. Right. You could say that's unconstitutional, but constitutional here, obviously. Or you could say it's all constitutional. Right. The position would be it's constitutional in all respects. 922 G1 is constitutional in all respects, including the $1 convicted felon. Even though there's no way that person would be in debtor's prison 35 years later. It's $1 and they paid it 35 years ago. There's no founding error theory, or tell me if there is. We would still have, if we were doing just as applied challenges, we would still have our theft analogy, which we haven't yet discussed as an alternative to the debtor's prison analogy. One, theft is covered by DS, so I don't, I think we're dealing with the failure to pay child support here. Well, the analogy of child support to theft, and that those have sufficient similarities that the fact that one- Because you're saying forget about the debtor's prison, that doesn't work. You'll just go with theft as an analogy. The government is presenting alternative historical analogs, or attempting to. But as far as the frontline position, which goes to your hypothetical, Congress can categorically disarm, and that history supports that. And that's what the Supreme Court's repeated assurances that felons- What do you mean that Congress can categorically disarm? History has shown that Congress, or that legislators have understood since the founding that they could disarm categories of people. Oh, sure, sure. The question is which categories, whether this case involves one of those categories. History would show that that's the legislature's judgment. Do you agree or not that he wouldn't fit into the Third Circuit danger bucket? That's right. This hypothetical, yes. I guess it was Sixth Circuit danger, Third Circuit violence. Oh, the actual case here, yes. He doesn't fit in. So he would not be able to be convicted in those two circuits, because his failure to pay isn't violence, and nor does it necessarily show dangerousness. If we're limiting the lens to convictions, yes, Your Honor. The breadth of his criminal history does not reflect non-dangerousness. That's a par footnote. They aren't yet really knowing whether they can decide. So that would suggest we could convict someone based on 404B that's never been proven beyond a reasonable doubt? As applied. These are as applied challenges. So as applied to the- But could you go to trial on someone and say, we know it's food stamp fraud, but look what he did five years, 20 years ago. It's messy, Your Honor, because when you're bringing an as applied challenge, what the founding generation would have thought was disarmable, it is the fullness of that person's- So what's the most dangerous violent thing that jumps out of this fellow's record? I didn't look at the PSR that carefully. That's been proven to any level of convincing force. Proven, so- Well, just some level of convincing force rather than the government saying it. I'm not aware of anything that's reflected in the pre-sentence investigation report that is proven. Only charges, only accusations. But you wouldn't want someone convicted just because the government says- Correct, Your Honor. If facts had to be presented to a jury, they would have to be facts and somehow found by the jury as to a person's dangerousness. And you'd have to maybe have a special verdict form related to findings of dangerousness. And then after the fact, the district court judge would have to say, given these facts that the jury found about the dangerousness or the lack of trustworthiness- Yes, it's unworkable and this case may present it. You're still not asking us to go en banc in the first instance. The government hasn't yet sought that approval from the Solicitor General and you're not recommending in this case. Well, it may depend on the- You haven't yet. Correct, Your Honor. Okay. Nor have you said, maybe you have, maybe this is implied, that okay, if the government doesn't prevail since we're reviewing a district court ruling, motion dismissed, but it didn't even have Diaz, none of us should be doing this now. At worst, it should be, send it back down and now apply Diaz however Diaz should work. Is that the government's position? No, no, no, Your Honor. You want us to decide on the history now? That's right. Here at the appellate level? That's right. Based on the 28G arguments, 28J arguments? Based on the law and the arguments presented. I mean, the government- I'm a little confused, I guess, so walk me through the very elementary basics. Is the government's position that we can travel under the Supreme Court statements in Heller and the other cases, well, nothing should cast doubt on pre-existing restrictions or long-standing restrictions on disenfranchising felons? I mean, so is that an exemption from the Bruin analysis? Is it a way we should do the Bruin analysis? I mean, don't you see the tension between taking that statement and categorically excluding this whole class of the people protected by the amendment from what the court told us to do in Bruin and Rahimi? I don't, Your Honor, and that's because the Supreme Court repeated assurances, like over a decade of statements regarding the presumptive lawfulness of the felon in possession statute. Well, they've also said law-abiding citizens, responsible citizens, and then in Rahimi they said, don't read too much into that. You've got to go to this historical, analogical reasoning to determine. I mean, it sure sounds like they want us to go case by case, but what I'm apprehending the government's position to be is we see this restriction on, or long-standing restrictions on felons holding guns, period, full stop, we go no farther. Well, the Supreme Court, even accepting those statements as dictum, that's a technical point, because the Supreme Court speaks not only through its holding, but through the message that its opinions provide. And the message that's consistently provided in these opinions is that felons are presumptively disarmable. But then why are we even talking about the historical analogs anyway? I mean, why wouldn't the government's position is we don't need any analogs because we're talking about felons? Well, that's the argument we presented, and then we're quickly retreating, falling back to alternative arguments, I guess. It's also distortion of the word presumptive, isn't it? What is a presumption? But the court does not say who is to rebut the presumption or what it takes to rebut the presumption. Right, but isn't a presumption presumptively rebuttable? Yes, Your Honor. Not categorical. That's right. Court didn't say categorically lawful. We've just saved the courts a lot of time. They did not say that, for whatever reason. I have a fact question. Do I understand there was some ambiguity in the briefing, but is the government now conceding that he was not on probation at the time he possessed? Yes, Your Honor. We have sought to withdraw the argument from our brief. Okay, and that's fine. Not a problem. Thank you for the clarification. As I read the probation termination document, it says offender has paid off all fines and fees in full discharges requested. And it's granted. Do I understand that correctly? That's how I read it. So that's perhaps another reason why the debtor's prison doesn't work, because it sounds like he's already paid off everything. Well, that document is a snapshot in time that the government accepts that he was not on probation based on that document, but not that he's continued to pay child support debts that he owes or that he— Okay, your point is he then—so this is May 7, 2019. You're saying between that date and the date of possession, he started to accumulate new debt? Well, the record doesn't state it. So I would say that that document doesn't provide enough information to know what debt he owed when. And that in a Rule 12 posture, which is where we would have been in the district court, factual disputes can't be decided at that time. I was actually going to say maybe this is an issue for remand to figure out, to the extent that this is the dispositive issue, let you all figure this out on district court. Well, the owing of child support— There's also a separate question, whether the mere fact that he owes child support but doesn't have a conviction for that debt, I think, raises a potential additional problem for you, doesn't it? Whether he owes child—it doesn't have— Let's say he's one day late on $1. 922 is not triggered based on that. It's triggered based on a conviction. That's right. He hasn't been convicted for anything after May 7, 2019. Correct. But he had been convicted for nonpayment of child support. Understood. So your point is May 7, 2019, he is fully current. The problem is, according to the argument, after that, he goes under debt. And that may be a limit to— Do you know how much the debt was? I do not know. It's not— A lot of Americans carry debt on their credit cards. They pass from month to month. I assume that's not a category of people that need to be disarmed. Right, Your Honor. And it's not— So why is this different? Credit card is a contract agreeing—allowing that nonpayment to continue. So it's not the same as a court order directing you to do something. And this court has said that— Do you know what the amount was at the time of possession? What the amount of his debt was? I do not know, Your Honor. What's his release date? I don't know, Your Honor. Defense attorney may know. I mean, he was—the indictment's 2021. He probably pled guilty, and he's been in jail for four years. We're having some pretty serious questions about the validity of the conviction. So he's been in jail for a while. In other words, a remand— I don't— A remand to do all this over again? You don't know if he was incarcerated? I don't know anything about—as I stand here today, about his incarceration, if any. All right. Thank you very much. Thank you, Your Honor. Ms. McIntyre, was he out on appeal, or has he been incarcerated? He's currently incarcerated. I have the Benefit of Trial Council with me at the table, and he believes that he'll be released maybe in June or July of— Oh, this year. So remand, from that standpoint, isn't going to help him much. No. And to turn to the court's inquiry about whether he owes child support now or not— Or at the time of possession. Right. We'd reject any value that that might have in terms of our knowledge. Just asking a question. And so whether he is—whether that statement in the PSR, he probably still owes. I mean, I think it was— Although I suppose the question is whether he's late. It's not whether he owes. Right. And I guess the answer would be, if he's late, it is not to the— He wasn't convicted for it. Exactly. And he hasn't been charged with any additional failure to pay child— And I take the court's point about this being a discriminatory scheme that is potentially disarming poor people or people who are behind on debts or who are carrying debts. And I think Justice Thomas warned of that in his dissent in Rahimi, that we have some kind of analysis that would prevent certain groups of people from bearing arms, which is not consistent with the Second Amendment. And I think that's further reason why the debtor's prison analogies don't work here. They're unconstitutional for a reason. And even if they were relevant here to the why and how, you know, there's probably good reason to not use that as a sufficient analog to disarm someone today. And under Diaz, I think— Or perhaps debtor's prison is irrelevant just simply because he's already paid his debt. Sure. Another additional reason. And I think, you know, under Diaz, we can't categorically disarm any and all felons. I think that's in part what Diaz stands for, this idea that we have to— not all felonies are created equally and that we have to conduct this how and why analysis. Because the plain text of G-1 implicates the Second Amendment, it is presumptively unconstitutional. It's the government's burden. But what do you make of the Supreme Court's repeated statements carving those restrictions out—felons, mentally ill, others? I mean, we submit that they're all dicta and that Diaz tells us that they're dicta. But we follow Supreme Court dicta. I mean, we're bound by it. So what do we do with it? Well, I think here we're bound by Diaz. So under the rule of orderliness, I think that Diaz is telling us that those—that dicta, those— Diaz affirmed. So whatever they said in terms of reversal would be itself dicta. I'm sorry? In Diaz, the convictions were all affirmed. Sure, but— Whatever they opined about other things— Well, but I think Diaz set out the standard and the framework that now this Court has used in other cases. And so I think Diaz stands for this analysis. What's the best case where Diaz has been used? And again, never to invalidate a conviction, correct? That's correct. As far as I know, I don't believe that it's ever invalidated a conviction. We would ask you to do it today. Good arguments, thank you. And I think, a final point, I think we have problems when we're looking at the PSR. I mean, the fact that this Court is questioning about information that's included in the PSR, which the PSR author admitted had insufficient evidence or documentation to justify, there are reasons, perhaps now, that didn't exist before, why a defendant would have reason to challenge what's in a PSR that didn't exist before we had this framework. And so I think when we're looking at a PSR that was perhaps admitted by and accepted by the District Court, when there's a higher burden of proof on the defendant to disprove those allegations in the PSR, it puts us in a dangerous circumstance when we're considering the heavy burden that the government has with the Second Amendment right to bear arms. And absent any other questions by the panel, I would see the remainder of my time and ask this Court to reverse. Thank you, counsel. Thank you. We appreciate it. When counsel have time, we'll call the second case, but no one needs to rush.